UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SARA J. LACKIE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *  Civil No. 15-30121-MGM |
| DEUTSCHE BANK NATIONAL TRUST | * |
| COMPANY, as Trustee for the Long Beach | * |
| Mortgage Trust 2006-6; JPMORGAN CHASE | * |
| BANK, N.A.; MORTGAGE ELECTRONIC | * |
| REGISTRATION SYSTEMS, INC.; and | * |
| DOES 1 THROUGH 10 INCLUSIVE, | * |
| | * |
| Defendants. | * |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. Nos. 17 and 24)

July 29, 2016

MASTROIANNI, U.S.D.J.

### I. INTRODUCTION

Sara J. Lackie ("Plaintiff"), proceeding *pro se*, brings this action against Deutsche Bank National Trust Company, as Trustee for the Long Beach Mortgage Trust ("DBNT"); JP Morgan Chase Bank, N.A., ("Chase"); and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants").[1] Plaintiff alleges various claims arising out of a mortgage dispute and

---

[1] Plaintiff also names "Does 1 through 10" as defendants and identifies them "as persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the Subject Property described in the Complaint." (Dkt. No. 1, Compl. ¶ 10.) As this court has previously explained:
> There is no indication that any unknown persons are claiming legal rights in the subject property. Instead, it appears these purported defendants are entirely fictitious, and are not meant to stand in for real persons or entities whose identities are merely unknown. The complaint does not mention these unknown defendants again, nor does it make any allegations against persons or entities whose identities are unknown to Plaintiff, so there are no claims against these purported defendants for the court to address.

*Andersen v. Lasalle Bank Natl. Assn.*, 2016 WL 3093375, at *7 n.1 (D. Mass. June 1, 2016).

seeks declaratory relief through a determination that the mortgage loan is void and that Defendants are enjoined from claiming an interest in the property at issue. Further, Plaintiff asks this court to enter an order to quiet title in her favor. Defendants filed separate motions to dismiss for failure to state a claim. The court will allow Defendants' motions to dismiss.

## II. FACTS

The following facts come from Plaintiff's Complaint (Dkt. No. 1) as well as documents referenced in and central to the Complaint, which Defendants have provided, and official public records. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (holding "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to [the] plaintiff's claim; or for documents sufficiently referred to in the complaint); *see also Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (reaffirming that courts can review documents referenced in the complaint in deciding a motion to dismiss under Rule 12(b)(6) (citing *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998)).

On or about June 7, 2006, Plaintiff and her ex-husband, Jeremy Lackie, executed a note and mortgage in favor of Long Beach Mortgage Company ("LBMC") in the amount of $202,400 for a property located at 270 South Liberty Street, Belchertown, Massachusetts (the "Property").[2] (Compl. ¶¶ 1, 24-27.) On June 28, 2012, Jeremy Lackie conveyed his interest in the Property by a quitclaim deed to Plaintiff under the terms of a Marital Separation Agreement. (Dkt. No. 18, Defn. Chase's Mem. Supp. Mot. to Dismiss ("Chase Mem."), Ex. 2.) On September 13, 2012, the mortgage was assigned to DBNT, as Trustee for Long Beach Mortgage Loan Trust 2006-6. (Compl. ¶ 30; Chase Mem., Ex. 3.) The assignment of mortgage ("Assignment") was recorded on September 27, 2012 in

---

[2] The mortgage, provided by Defendants, is dated May 30, 2006. (Dkt. No. 18, Defn. Chase's Mem. Supp. Mot. to Dismiss ("Chase Mem.") Ex. 1; Dkt. No. 25, Defn. DBNT's and MERS' Mem. Supp. Mot. to Dismiss ("DBNT & MERS Mem."), Ex. 2.) This difference in timing is irrelevant, however.

the Hampshire County Registry of Deeds in Book 11058, at Page 266. (Compl. ¶ 30; Chase Mem., Ex. 3.) Plaintiff was not notified of the assignment of her mortgage. (Compl. ¶ 135.) On December 16, 2014, an Order of Notice of the Servicemembers Civil Relief Act from the Massachusetts Land Court was recorded in the Hampshire County Registry of Deeds in Book 11828, at Page 301. (Chase Mem. 3, Ex. 4.)

### III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. *See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012). When a plaintiff proceeds *pro se*, the court must liberally construe the plaintiff's pleadings and hold them to a less stringent standard than similar pleadings drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### IV. DISCUSSION

This action primarily revolves around allegations that the mortgage and note were not properly assigned from the originator, LBMC, and that Defendants are not lawful beneficiaries under the mortgage, thereby "making the [m]ortgage a nullity." (Compl. ¶¶ 50-51.) In support of these allegations, Plaintiff sets forth the following arguments: (1) Defendants failed to assign the mortgage and the note together, thereby rendering the mortgage loan void; (2) the mortgage was not legally assigned from LBMC to DBNT and failure to record any assignment of the mortgage renders

3

the mortgage loan fraudulent and void; (3) securitization of the loan did not comply with the terms of the Pooling and Servicing Agreement of the Long Beach Mortgage Loan Trust 2006-6 ("Trust"), such that none of the Defendants have a beneficial interest in the Property; and (4) MERS lacked the authority to assign the mortgage, and any assignment from MERS is therefore fraudulent and void. The court finds Plaintiff's claims unavailing and dismisses them in turn, addressing the claims against MERS first.

### A.   Involvement of MERS

As an initial matter, DBNT and MERS seek the dismissal of all claims against MERS on the basis that it had no involvement with or connection to Plaintiff's mortgage or any assignment thereof. Plaintiff alleges MERS was a purported nominee under the mortgage and any assignment from MERS was null and void. (Compl. ¶ 32, 74-88.) Plaintiff further asserts that neither MERS nor its successors in interest may legally enforce the mortgage through foreclosure. (*Id.* ¶¶ 96, 100). DBNT and MERS assert the Trust became the record holder of the mortgage pursuant to the Assignment recorded on September 27, 2012 "with the right and power to enforce the note and mortgage at issue, including through foreclosure." (DBNT & MERS Mem. 1.)

Although the original prospectus for the Trust states that "assignments of the mortgages for the mortgage loans held by the related trust *may* be registered electronically through [MERS]," any involvement of MERS after the mortgage was assigned to the Trust is irrelevant to the case at bar. Long Beach Mortgage Loan Trust 2006-6 Prospectus Supplement to Prospectus 36 (July 21, 2006) (emphasis added). Plaintiff's claims rely on the theory of the mortgage not being properly assigned from LBMC to DBNT, thereby rendering the mortgage null and void prior to any point at which MERS would have become involved. As discussed below, the mortgage was legally assigned from LBMC to DBNT and MERS was not involved with the mortgage or any assignment thereof prior to

4

the assignment to DBNT.[3] While it is certainly possible that Plaintiff's mortgage was registered with MERS as nominee following the assignment of the mortgage to the Trust, such registration would not affect the validity of the mortgage.[4] *See Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282, 291-92 (1st Cir. 2013) (holding "there is no reason to doubt the legitimacy of a common arrangement whereby MERS holds bare legal title as mortgagee of record and the noteholder alone enjoys the beneficial interest in the loan"). Therefore, the court dismisses all claims as to MERS due to its non-involvement with Plaintiff's mortgage or any assignment thereof for the relevant period at issue.

### B. Separation of the mortgage and note

Plaintiff alleges that "the [n]ote and [m]ortgage are currently owned by at least two separate entities" and separation of the mortgage from the note makes "the [m]ortgage unenforceable, null, deficient and illegal." (Compl. ¶¶ 69, 72.) Plaintiff further alleges that such splitting of the mortgage and note constitutes a breach of contract.[5] However, as Chase correctly points out, Massachusetts "law is clear that 'a mortgage and the underlying note can be split.'" *Foregger v. Residential Credit Solutions, Inc.*, 2013 WL 3208596, at *5 (D. Mass. June 21, 2013) (quoting *Eaton v. Federal Nat'l Mortgage Assoc.*, 969 N.E.2d 1118, 1124 (Mass. 2012).

> In Massachusetts, the note and the mortgage need not be held by the same entity . . . . Massachusetts law makes pellucid that the mortgage and the note are separate instruments; when held by separate parties, the mortgagee holds a bare legal interest

---

[3] Plaintiff asserts that MERS was the assignor in the assignment of the mortgage to DBNT. However, as discussed below, the Assignment designates the assignor as the Federal Deposit Insurance Corporation ("FDIC"), as receiver of Washington Mutual Bank ("WaMu"), successor in interest to LBMC. (DBNT & MERS Mem., Ex. 3.)

[4] In addition, it appears MERS is not involved with the foreclosure action against Plaintiff. According to the Order of Notice of the Servicemembers Civil Relief Act required prior to instituting a foreclosure, DBNT is the entity claiming an interest in the mortgage, not MERS. (*See* Chase Mem., Ex. 4.)

[5] With respect to her breach of contract claim, Plaintiff alleges that Paragraph 20 of the mortgage was violated because the note and mortgage were purportedly not transferred together. (Compl. ¶ 53.) While Paragraph 20 states that "[t]he Note or a partial interest in the note (together with this Security Instrument) can be sold one or more times," there is no explicit prohibition on splitting the interests in the note and mortgage. (Chase Mem., Ex. 1 ¶ 20.) Examining this same language, the court in *Foregger v. Residential Credit Solutions, Inc.*, 2013 WL 3208596, at *5 (D. Mass. June 21, 2013) also determined that Paragraph 20 "does not contain any prohibition on splitting the interests in the note and mortgage." *Foregger v. Residential Credit Solutions, Inc.*, 2013 WL 3208596, at *5 (D. Mass. June 21, 2013) (holding plaintiff had not stated a valid breach of contract claim based on the splitting of the mortgage and the note).

5

and the noteholder enjoys the beneficial interest. *Eaton v. Federal Nat. Mortg. Ass'n*, 969 N.E.2d 1118, 1124 (Mass. 2012). The mortgagee need not possess any scintilla of a beneficial interest in order to hold the mortgage.

*Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282, 292-93 (1st Cir. 2013).

Thus, "[a] mortgage *can* be split from its underlying note, so long as the two are held by the same foreclosing party at the time of foreclosure." *Aragao v. Mortgage Elec. Registration Sys., Inc.*, 22 F. Supp. 3d 133, 139 (D. Mass. 2014) (emphasis in original) (concluding "[t]he key inquiry, then, is whether [the bank] held both the note and the mortgage at the time of foreclosure . . . . That the bank did not hold both before the foreclosure date is of no legal consequence."). Accordingly, Plaintiff's breach of contract and declaratory relief claims, insofar as they rely on the erroneous theory that the mortgage and the note may not be split (and that any splitting renders the mortgage void), fail as a matter of law.[6]

### C. Validity of assignment of mortgage to DBNT, as Trustee for Long Beach Mortgage Loan Trust 2006-6

Throughout the Complaint, Plaintiff focuses on the alleged invalidity of any assignment of mortgage, which Plaintiff asserts extinguishes any rights or interest claimed by Defendants. (Compl. ¶¶ 50-52.) Specifically, Plaintiff alleges there is no perfected chain of title between LBMC and DBNT, and failure to record any assignment between LBMC and DBNT renders the mortgage a nullity, thereby entitling her to a declaration that DBNT has abandoned its interest in the property and the mortgage is void. (*Id.* ¶¶ 34, 51, 72.) For the following reasons, the court rejects each of these arguments.

---

[6] The court makes no finding as to whether the mortgage and the note are currently held by the same entity so as to permit a legal foreclosure at this time or in the future. Those issues simply are not before the court.

6

1. **The mortgage was properly assigned to DBNT, as Trustee for Long Beach Mortgage Loan Trust 2006-6.**

Plaintiff asserts the mortgage and note were not legally assigned from LBMC to DBNT, which has resulted in a broken chain of title. (Compl. ¶¶ 35, 36, 48.) LBMC, a wholly owned subsidiary of Washington Mutual Bank ("WaMu"), was the original mortgagee. *See* Long Beach Mortgage Loan Trust 2006-6 Prospectus Supplement to Prospectus S-1 (July 21, 2006). Following its collapse at the height of the financial crisis, WaMu was sold to Chase in September 2008. *See* Purchase and Assumption Agreement between Federal Deposit Insurance Corporation and JPMorgan Chase Bank, N.A., http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf (Sept. 25, 2008); *see also* Press Release, FDIC, JPMorgan Chase Acquires Banking Operations of Washington Mutual (Sept. 25, 2008). The FDIC, as receiver of WaMu, facilitated the assignment of Plaintiff's mortgage to DBNT. (*See* Chase Mem., Ex. 3.) "Federal law specifically authorizes the FDIC, when acting as receiver of a failed bank, to 'transfer any asset or liability' of the failed bank 'without any approval, assignment, or consent with respect to such transfer.'" *Andersen v. LaSalle Bank Nat'l Ass'n,* 2016 WL 3093375, at *3 (D. Mass. June 1, 2016) (quoting 12 U.S.C. § 1821(d)(2)(G)(i)(II)). "[T]ransfer of a mortgage, authorized by federal law, obviates the need for the specific written assignment that state law would otherwise require." *Id.* (quoting *Demelo v. U.S. Bank N.A.*, 727 F.3d 117, 125 (1st Cir. 2013)). Therefore, the assignment of Plaintiff's mortgage to DBNT, with the FDIC acting as an intermediary, was properly consummated, and Plaintiff's claims that rely on this faulty invalid-assignment argument fail as a result.

2. **Failure to record an assignment does not render the mortgage void.**

Plaintiff also asserts that "there have been no recorded assignments of the mortgage or note with respect to Defendant DBNT" and "[n]o assignment of the [m]ortgage is recorded in the Hampshire County records to reflect the transfer of the loan debt to DBNT," thereby "making the

7

[m]ortgage a nullity."[7] (Compl. ¶¶ 51, 113, 148.) However, "recording [an] assignment is preferred but not required." *Rosa v. Mortg. Elec. Sys., Inc.*, 821 F. Supp. 2d 423, 430 (D. Mass. 2011). "A mortgage assignment is valid as long as it complies with the requirements of Mass. Gen. Laws. ch. 183, § 54B." *Id.* "The Massachusetts statute regarding mortgage assignments requires that the assignment be executed before a notary public, by a person purporting to hold a position such as vice president, secretary or assistant secretary of the entity that holds record title of the mortgage." *Id.* (citing Mass. Gen. Laws. ch. 183, § 54B). Plaintiff does not put forth any factual allegations or arguments to suggest that the Assignment failed to comply with the requirements under the statute.[8]

Plaintiff further asserts the failure to record any assignment and failure to notify Plaintiff of any assignment constituted a breach of an unspecified provision of the mortgage contract. (Compl. ¶¶ 135, 151.) But, "[t]o plead breach of contract, the plaintiff must describe 'the nature of the alleged contract[,] what obligations were imposed on each of the parties by the alleged contract[, and] the damages attributable to the breach.'" *Barricello v. Wells Fargo Bank, N.A.*, 2016 WL 1244993, at *7 (D. Mass. Mar. 22, 2016) (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996). "The plaintiff must also 'describ[e], with substantial certainty, the specific contractual promise the defendant failed to keep.'" *Id.* (quoting *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007)). Here, Plaintiff identifies the mortgage as the contract at issue, but she fails to identify the specific terms that any defendant breached. (Compl. ¶¶ 133-35.) Moreover, Paragraph 20 of the Mortgage states the mortgage loan "can be sold one or more times without prior notice" to Plaintiff. (Chase Mem., Ex. 1 ¶ 20.) *See Foregger*, 2013 WL 3208596, at *5 ("This Court reads ¶ 20 as establishing that the note and the mortgage could be sold without prior notice . . .") Plaintiff points to no other

---

[7] In the introduction of her Complaint, Plaintiff alleges "DBNT is the current Trustee for the Trust, as evidenced by the recorded assignment." (*Id.* ¶ 30.)
[8] As discussed above, the transfer of the mortgage from LBMC to Chase following WaMu's collapse, with the FDIC as receiver, presents a clear chain of title.

contractual provision or assurance made by Defendants that would require Plaintiff be notified of any assignment of her mortgage. In addition, there is no contractual provision promising that any assignment of the mortgage would be recorded. Accordingly, Plaintiff fails to state a breach of contract claim on these theories.

### D.  Violation of the Pooling and Servicing Agreement

Plaintiff alleges Defendants violated the Pooling and Servicing Agreement ("PSA") governing the Trust, in part by failing to assign the mortgage or the note prior to the closing date and failing to notify Plaintiff of any such assignment. (Compl. ¶¶ 29, 110-16, 121.) In addition, Plaintiff asserts that deficiencies in the securitization process render the mortgage invalid, such that none of the Defendants hold a secured interest in the Property. (*Id.* ¶¶ 129-30.) Plaintiff further asserts she is a third-party beneficiary to the Trust. (*Id.* ¶ 109.) As Chase correctly articulates, however, Plaintiff lacks standing to challenge the validity of the mortgage assignment based on alleged procedural violations of the PSA. (Chase Mem. 4.)

"The First Circuit has explained that "standing [is] appropriate in instances where a mortgagor 'challenge[s] a mortgage assignment as invalid, ineffective, or void,' although not where the challenge would 'render [the assignment] merely voidable . . . but otherwise effective to pass legal title.'" *Sullivan v. Bank of New York Mellon Corp.*, 91 F. Supp. 3d 154, 171 (D. Mass. 2015); *see also Wilson v. HSBC Mortg. Services, Inc.*, 744 F.3d 1, 14 (1st Cir. 2014) (holding assignment of mortgage was not void, but rather was potentially voidable, thereby precluding homeowners' standing to assert claims regarding alleged invalidity of assignment). "Thus, claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing." *Woods v. Wells Fargo Bank, N.A.*, 733 F. 3d 349, 354 (1st Cir. 2013). As this court explained in *Sullivan*, claims regarding noncompliance with the PSA under New York trust law, by which Plaintiff asserts this Trust is governed (Compl. ¶ 108), "merely

9

render the assignment voidable and, thus, do not support standing."[9] *Sullivan*, 91 F. Supp. 3d at 171. Hence, Plaintiff lacks standing to challenge the mortgage assignment for its alleged violation of the terms of the PSA. In addition, Plaintiff has failed to state with the required specificity which provisions of the PSA were violated or how the securitization process renders the mortgage invalid. *See, e.g.*, *U.S. Bank Nat. Ass'n v. Ibanez*, 941 N.E.2d 40, 51-52 (Mass. 2011) ("Where, as here, mortgage loans are pooled together in a trust and converted into mortgage-backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home . . . and must be treated as such.") Accordingly, the court rejects these claims.

### E. Quiet Title Action

Plaintiff seeks an order granting Quiet Title in her favor on the grounds that the failure to record an assignment of the mortgage to reflect the transfer of the mortgage to DBNT has created a cloud on title. (Compl. ¶¶ 148-49; 158-59.) As stated, the Assignment to DBNT was valid and recorded in the Hampshire County Registry of Deeds. (*See* Chase Mem., Ex. 3.) Even if the Assignment had not been recorded, Massachusetts law does not require that an assignment be recorded in order to be valid. *See* Mass. Gen. Laws ch. 183, § 54B. As DBNT correctly points out, Plaintiff's quiet title claim is founded upon legally-deficient theories, which this court has already addressed. (DBNT & MERS Mem. 7.) Plaintiff's claim for quiet title therefore will be dismissed.[10]

---

[9] The court in *Sullivan* stated: "The Second Circuit . . . recently explained that 'the weight of New York authority is contrary to plaintiffs' contention that any failure to comply with the terms of the PSAs rendered defendants' acquisition of plaintiffs' loans and mortgages void as a matter of law.'" *Sullivan*, 91 F. Supp. at 171 (quoting *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 88 (2d Cir. 2014)); *see also Wells Fargo Bank, N.A. v. Erobobo*, 127 A.D. 1176, 1178 (N.Y. App. Div. 2015).

[10] If Plaintiff is in arrears with respect to her mortgage loan, as appears to the basis of a foreclosure here, "[a] quiet title action is not available to 'a mortgagor whose debt is in arrears, because, until the mortgage is discharged, the title necessarily remains under a cloud.'" *Bean v. Bank of N.Y. Mellon*, 2012 WL 4103913, at *11 (D. Mass. Sept. 18, 2012) (quoting *Oum v. Wells Fargo, N.A.*, 2012 WL 390271, at *3 (D. Mass. Feb. 8, 2012)); *see also Barricello v. Wells Fargo Bank, N.A.*, 2016 WL 1244993, at *8 (D. Mass. Mar. 22, 2016) (holding "under Massachusetts law, a mortgagor cannot bring an action to quiet title in a mortgaged property" because legal title is held by the mortgagee, not the mortgagor).

### F. Declaratory Judgment

For her third cause of action, Plaintiff seeks declaratory relief through a determination that the mortgage is fraudulent and void and that Defendants are enjoined from enforcing or claiming any interest in the mortgage loan. Plaintiff's claim in this regard is based entirely on the theories the court has already rejected. Accordingly, Plaintiff's claim for declaratory judgment is dismissed.

## V. CONCLUSION

Defendants' motions to dismiss (Dkt. Nos. 17, 24) are ALLOWED in their entirety. The clerk shall enter judgment for Defendants, and this case may now be closed.

It is So Ordered.

   /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge